William H. MILLER, Petitioner,
Appellant,

v.

UNITED STATES of America,
Respondent, Appellee.

No. 77–1193.

United States Court of Appeals,
First Circuit.

Submitted Oct. 6, 1977.

Decided Oct. 27, 1977.

William H. Miller pro se on brief.

James N. Gabriel, U. S. Atty., and William A. Brown, Asst. U. S. Atty., Chief, Civ. Div., Boston, Mass., on brief for respondent, appellee.

Before COFFIN, Chief Judge, LAY * and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

On September 8, 1971, after he was found guilty by a jury of federal narcotics violations, William H. Miller was sentenced by the District Court for the District of Massachusetts to serve concurrent twenty year sentences. His conviction was affirmed by this court. 463 F.2d 600 (1st Cir. 1972). On July 21, 1976, acting *pro se*, Miller petitioned the sentencing court for habeas corpus, claiming that a conflict of interest had operated to deny him the effective assistance of counsel at his trial. Relief was denied and this appeal followed.

Miller's application was originally filed under 28 U.S.C. §§ 2241 *et seq.*, but was later styled a "Motion to vacate sentence and conviction pursuant to Title 28, Section 2255". In ruling upon it, the district court explicitly relied on a number of affidavits accompanying the Government's motion to dismiss or, in the alternative, for summary judgment. Miller indicates that he first saw these affidavits when he was served with the district court's decision. Miller thereupon filed a counter affidavit along with his notice of appeal.

Miller here contends that the district court erred in granting summary judgment for the Government and dismissing the § 2241/2255 motion solely on the basis of government affidavits, as well as in making its decision without a hearing. He asks us to find error in the lower court's rejection of his claim that he was unconstitutionally denied the effective assistance of counsel—a claim based on Miller's trial attorney's concurrent representation of one Robert Sullivan. Sullivan was a government witness against Miller in an unrelated indictment that was pending at the time of Miller's trial and conviction.

We state the facts underlying Miller's ineffective assistance claim in the light most favorable to Miller. At different times in 1971, three separate indictments were returned against him in the District of Massachusetts: CR 71–146–G was returned on March 18; CR 71–151–C, on March 26; and CR 71–278–G, on June 10. The second of these, indictment 151–C, led to the conviction Miller challenges here. The other two indictments never went to trial, each having been dismissed as to Miller after several months. All of the indictments charged narcotic violations.

In 146–G, Miller was indicted with a number of others, including Robert Sullivan. Miller was represented at the bail hearing by Attorney Michael S. Field; Sullivan was represented by Attorney E. Peter Mullane, one of Mr. Field's law partners. Mullane's motion to withdraw because of a possible conflict of interest was denied by the court. 146–G was dismissed as to Miller, who had pleaded not guilty, on June 25, 1971. Sullivan, on the other hand, was convicted after pleading guilty to several counts, and, on June 20, 1971, was sentenced to a term which he began to serve on

* Of the Eighth Circuit, sitting by designation.

or about June 28, 1971. Sullivan allegedly appeared before the Grand Jury as a government witness in connection with this indictment of Miller.

The indictment numbered 151–C (the case in issue here) was returned on March 26 against Miller and over twenty others. It involved violations factually independent of those charged in 146–G. Robert Sullivan was neither implicated nor indicted in 151–C. He did not appear before the Grand Jury in connection with 151–C, nor did he testify at the trial of 151–C. Trial on this charge was held in August, 1971. Miller's counsel at trial was E. Peter Mullane, though Field had earlier filed a notice that he (Field) would appear on Miller's behalf. Miller was convicted and sentenced on September 8, 1971.

The final indictment, 278–G, returned in June, 1971, against Miller alone, was pending in August during Miller's trial on 151–C. 278–G apparently superseded the earlier 146–G, and may have been returned as a result of Robert Sullivan's reappearance before the Grand Jury. It, too, was factually unrelated to 151–C. Mullane was Sullivan's counsel at the time of this reappearance. Mullane allegedly told Miller that Sullivan offered to participate in the Grand Jury proceedings in 278–G in order to gain some time before beginning to serve his sentence in 146–G. On September 22, while proceedings in 278–G were in progress, Miller sought habeas corpus to produce Sullivan in the proceedings. The indictment in 278–G was dismissed in November, 1971 and habeas did not issue. Miller claims only recently to have realized that Mullane was representing both Sullivan and himself during those months.

We address the procedural issue first. Miller argues that summary judgment on the § 2241/2255 motion should not have been granted without a hearing. He asserts that it should have been treated as a § 2255 motion, in which the district court is required to hold an evidentiary hearing "unless it conclusively appears from the files and records that petitioner is not entitled to relief." 28 U.S.C. § 2255. The

Government responds that Miller's motion did not come under § 2255, but under § 2241, and that, in any event, summary judgment was both permissible and appropriate.

Miller's habeas petition should have been treated as a motion to vacate, pursuant to § 2255. *Moran v. Hogan*, 494 F.2d 1220 (1st Cir. 1974). *See United States v. Tindle*, 173 U.S.App.D.C. 77, 522 F.2d 689 (1975). *Pro se* petitions should be read liberally. *McNair v. McCune*, 527 F.2d 874 (4th Cir. 1975). The district court, which was the sentencing court, would have had no jurisdiction over a true § 2241 motion by Miller. Section 2241 provides a remedy for a federal prisoner who contests the conditions of his confinement; that motion must ordinarily be filed and heard by the district court in whose jurisdiction the petitioner is confined. 28 U.S.C. § 2241(a); *Ahrens v. Clark*, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948); *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). The sentencing court is the designated forum for challenges to the validity of a federal prisoner's conviction or sentence, which are motions authorized by 28 U.S.C. § 2255. *United States v. DiRusso*, 535 F.2d 673 (1st Cir. 1976). *See generally*, 2 C. Wright, *Federal Practice and Procedure*, §§ 589–93 (1969). But, since § 2241 and § 2255 were designated to be coextensive in all but venue, *Allison v. Blackledge*, 431 U.S. 63, 75 n. 8, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Hill v. United States*, 368 U.S. 424, 427, 82 S.Ct. 468, 7 L.Ed.2d 417 (1961), this court is free to treat the lower court's disposition as if it were made under § 2255.

Though § 2255 requires a hearing if the proper disposition of the motion is not apparent from the files and records, *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), the district court may make its preliminary assessment of the motion's merits on an expanded record that may include "in an appropriate case, even affidavits". *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970); *see Allison v. Blackledge, supra*, 431 U.S. at 82

n. 25, 97 S.Ct. 1621; *see also* Rules Governing § 2255 Proceedings in District Courts, R. 7, 8 (Sept. 28, 1976).[1] The court may not, however, resolve critical factual questions against the petitioner simply on the basis of *ex parte* government affidavits. *Allison v. Blackledge, supra; Machibroda v. United States, supra.* Affidavits may assist only in determining if there is a genuine issue of fact to resolve. *Allison v. Blackledge, supra,* 431 U.S. at 80, 97 S.Ct. 1621; *Machibroda v. United States, supra; see Dalli v. United States,* 491 F.2d 758 (2d Cir. 1974).

◼ In the present case, the district court went too far in taking as proven certain assertions of fact contained in the *ex parte* government affidavits: for example, Mullane's affidavit, submitted by the Government, asserted that Miller was informed of, and accepted, Mullane's simultaneous representation of Sullivan in 278–G and Miller in 151–C; Miller later vigorously denied this in his post-decision affidavit. Also, the extent of Sullivan's participation in the grand jury proceedings in 146–G and 278–G seems to have been determined on the basis solely of a government affidavit later disputed by Miller.

◼ If the correctness of the district court's decision depended solely on these and other questionable or contested facts derived from the government's *ex parte* affidavits, we would vacate and remand for a hearing. However, such is not the case. Entirely without reference to any of these unsettled facts, and accepting as true only Miller's allegations and facts that otherwise appear in case files and records, we are satisfied that Miller has failed to make out a claim that he was denied the effective assistance of counsel during his criminal trial. Where there are no disputed facts crucial to the outcome, leaving only questions of law, § 2255 does not require a hearing; the motion may be decided, as was done here, without oral presentation. *Moran v. Hogan, supra; Sosa v. United States,* 550 F.2d 244, 246 (5th Cir. 1977) (separate opinion of Tuttle, J.). *But see Sosa v. United States, supra* (opinion of the court). We held in *Moran* that a hearing "generally is not necessary when a § 2255 motion (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." 494 F.2d at 1222. Under these criteria, Miller's claim is demonstrably inadequate.

◼ In analyzing Miller's allegations, we first note that his attorney's purported conflict of interest did not arise from the simultaneous representation of two or more codefendants in a single cause ("joint" representation). Rather it involved concurrent representation of someone whom Miller contends might have been called as a defense witness and who was a hostile witness in unrelated proceedings. Only a relatively slight showing of actual prejudice is required in joint representation cases, where an attorney is particularly susceptible to disabling conflicts. *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Donahue,* 560 F.2d 1039 (1st Cir. 1977); *United States v. Foster,* 469 F.2d 1 (1st Cir. 1972); *Marxuach v. United States,* 398 F.2d 548 (1st Cir.), *cert. denied,* 393 U.S. 982, 89 S.Ct. 454, 21 L.Ed.2d 443 (1968). But in a "dual" representation case, such as the present, a real conflict or specific instance of prejudice must be shown to establish the deprivation of effective assistance of counsel. *United States v. Donatelli,* 484 F.2d 505 (1st Cir. 1973) (defense counsel's previous brief representation of a government witness at defendant's trial not shown to result in prejudice); *United States v. Jeffers,* 520 F.2d 1256 (7th Cir. 1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976) (defense attorney was a member of a firm which had earlier been employed by a government witness, but no sufficient showing of actual prejudice made); *Porter*

---

1. The Court's decision in *Allison v. Blackledge* suggests that Rules 7 and 8 essentially formalized a procedure which in fact had earlier been proper practice. *Allison v. Blackledge, supra,* 431 U.S. at 82, 82 n. 25, 97 S.Ct. 1621, *citing Raines v. United States, supra.*

*v. United States*, 298 F.2d 461 (5th Cir. 1962) (defense attorney concurrently representing police officer who, though not a witness, was involved with the case and should have been called as a witness resulted in a denial of effective assistance of counsel). *See also Williamson v. LaVallee*, 282 F.Supp. 968 (E.D.N.Y.1968); *United States ex rel. Miller v. Myers*, 253 F.Supp. 55 (E.D.Pa.1966).

■ Construing the facts in Miller's favor, no plausible claim of prejudice based on Mullane's representation of Sullivan is made out here. Sullivan had no factual connection with the violation charged in the case on trial, 151–C. He cannot, indeed, be realistically viewed as a potential witness in that case. To be sure, Miller asserts that Mullane should have called Sullivan as a witness in 151–C "to illustrate that the witnesses [in 151–C] had done the exact same thing as Robert Sullivan did, testify falsely before the grand jury." But no court could properly have allowed testimony for this purpose, from someone entirely unconnected with the case. And even assuming, as Miller argues, that Sullivan's testimony before the Grand Jury in 146–G was perjured, it strains credulity to believe that Sullivan would have admitted to perjury if called to testify in 151–C. Indeed, far from Sullivan's presence at the 151–C trial being a help to Miller, it would seemingly have been detrimental: the jury would have learned from Sullivan of allegations that Miller had participated in other offenses.

Miller further contends that had Sullivan not testified before the Grand Jury in 278–G, that indictment would not have been pending during the trial of 151–C, and bail would not have been set so high. However, the fact that Mullane rather than someone else represented Sullivan had no bearing on these events, and the bail claim, furthermore, is moot.

Finally, Miller alleges that had Mullane not represented Sullivan, Mullane's advice that Miller not take the stand would have been different. Mullane counselled this strategy, according to Miller, because of the possibility that the pending indictment, 278–G, would be brought out on cross-examination. But as no interest of Sullivan's was affected by whether or not Miller took the stand, Mullane had no reason to advise Miller differently than would any other attorney. Miller does not allege that he threatened to implicate Sullivan in 151–C if given the chance to take the stand.[2]

We can conceive of no cross-examination which might have been hindered, or theory of defense squelched by any loyalties Mullane may have had to Sullivan. Miller points to no actual defect in the trial itself. According to the trial judge, Mullane conducted the defense in a professional manner. The most that can be said is that Mullane's representation of Sullivan at a time prior to trial, when Sullivan supposedly went before the Grand Jury in 278–G, is obnoxious to Miller. Miller understandably may find it hard to accept that a lawyer who counselled an antagonist in other matters was ·loyal to him in the present one.

However, while the situation might better have been avoided for appearance's sake and also to avoid actual conflict in the other indictments, there is no reason that it should have affected the quality of representation provided to Miller in this case. No actual conflict existed to prevent Mullane from giving Miller fully effective counselling and representation in 151–C, nor does it appear that he failed in any way to fulfill that obligation.

*Affirmed.*

2. The fact that Mullane may have counselled Sullivan at the time the latter went before the Grand Jury, and so, as Miller sees it, lent his assistance indirectly to the institution of a proceeding that discouraged Miller from later testifying in the case on trial, does not show that Miller was inadequately represented at the trial. That Mullane acted in Sullivan's best interest in 278–G provides no reason for him to have afforded Miller diminished representation in the unrelated 151–C.